IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOSÉ D. ALBARRÁN-PÉREZ**<br><br>Plaintiff<br><br>V.S.<br><br>**RAÚL RIVERA-RODRÍGUEZ,** in his individual capacity and in his official capacity as Mayor of Guayanilla; **MUNICIPALITY OF GUAYANILLA**<br><br>Defendants | CIVIL NO.:<br><br><br><br>CIVIL RIGHTS<br>**(Jury Trial Demanded)** |

# COMPLAINT

**TO THE HONORABLE COURT:**

**COMES** now plaintiff through the undersigned attorney and very respectfully, **SETS FORTH** and **PRAYS**:

### I. JURISDICTION AND VENUE

1.1. This Honorable Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1443(3) as plaintiff is seeking declaratory and injunctive relief, as allowed under 42 U.S.C. § 1983 for violations of his rights under the First Amendment of the U.S. Constitution. Supplemental jurisdiction is invoked under 28 U.S.C. § 1367 for derivative claims arising under Puerto Rico law.

1.2. The District of Puerto Rico is the proper venue in which to hear the instant matter, pursuant to 28 U.S.C. § 1391, all the relevant facts occurred within that jurisdiction.

## II.   THE PARTIES

2.1. Plaintiff, José D. Albarrán-Pérez, is of legal age, single, a Municipality of Guayanilla employee and a resident of Guayanilla, Puerto Rico since the year 1986. He is an active, vocal and well-known leader and member of the Popular Democratic Party (hereinafter referred to as "PDP").

2.2. Defendant, Hon. Raúl Rivera-Rodríguez holds the office of Mayor of Guayanilla after being elected on November 2020 and sworn in on January 2021. Mayor Rivera-Rodríguez is the Guayanilla municipal president of the New Progressive Party (hereinafter referred to as "NPP"), the political party under which he was elected. He is sued both in his individual and in his official capacities. In his capacity as mayor, this codefendant is the nominating authority with ultimate and exclusive authority on hiring, retention and human resources determinations, to the point that his determinations in that role are deemed, *ipso jure*, as municipal policy.

2.3. Defendant the Municipality of Guayanilla is a political subdivision of the Commonwealth of Puerto Rico located in the southern region of the main island. Founded in the year 1511, after originally being part of the municipalities of San Germán and Yauco. The municipal government of Guayanilla is currently governed by the Municipal Code of 2020, 21 P.R. Laws Ann. § 7001, et seq., along with other applicable legal provisions. Under Puerto Rico law, the Municipality may sue and be sued

independently and under federal law, it is not entitled to claim immunity from suit under the auspices of the Eleventh Amendment to the U.S. Constitution. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 700-701 (1978).

### III. THE FACTS AND THE REMEDY SOUGHT

3.1. Since the middle of the 20th century, the PDP has been the dominant force in the mayoral elections held in Guayanilla every four years.

3.2. The PDP last achieved control of the Guayanilla City Hall in the 2000 general election, when the Hon. Edgardo Arlequín-Vélez was elected and obtained reelection in 2004, 2008 and 2012.

3.3. Towards the end of his final term, Mayor Arlequín-Vélez resigned from his position, whereupon he was replaced by then PDP representative, Hon. Nelson J. Torres-Yordán, who in turn was elected in the 2016 general election.

3.4. In the recent 2020 general election, co-defendant Hon. Raúl Rivera-Rodríguez soundly defeated former Mayor Torres-Yordán to become the first NPP mayor in Guayanilla in over two decades.

3.5. Plaintiff has spent his entire life as an active supporter of the PDP in his beloved hometown of Guayanilla, beginning with his participation of former PDP Mayor's Edgardo Arlequín-Vélez' Advance Team since 2004, an initial foray into politics that was followed with a very active role in

the PDP Youth Organization in Guayanilla and in the polling stations in electoral events.

3.6. Plaintiff has never engaged in active politics for any organization other than the PDP.

3.7. Plaintiff's support of the PDP has not been limited to local elections in Guayanilla, but has rather been extended to other candidacies that said party has been able to vote for such as candidates for governor, resident commissioner and both houses of the Puerto Rico Legislature.

3.8. Plaintiff Albarrán-Pérez, who holds a B.B.A. in industrial management from the Interamerican University of Puerto Rico and a certification in preschool education from the Ana G. Méndez University System, began his journey as a Municipality of Guayanilla municipal employee in 2006, as a worker assigned to the Municipal Public Works Department.

3.9. Based on plaintiff's satisfactory job performance, as well as in his academic credentials, in 2015, he was appointed as director of the "Mundo de Sueños Day Care Center", a post for which he was reappointed by the subsequent two mayors and in which he remained until December 2023.

3.10. The Mundo de Sueños Day Care Center is operated by the Municipality of Guayanilla for the benefit of people working in that Municipality, notwithstanding the fact that it is funded through a federal grant channeled through the "Administración para el Cuidado y Desarrollo

Integral de la Niñez" (hereinafter referred to as "ACUDEN"), which in turn is part of the Puerto Rico Family and Children Department.

3.11. ACUDEN funds and sets operational standards for programs such as the Mundo de Sueños Day Care Center, this notwithstanding the fact remains that, where the grantee is a municipal government (as is the case in Guayanilla), individuals working under such programs are municipal employees with the mayor serving his/her usual role as the nominating authority.

3.12. Plaintiff's appointment as director of the Mundo de Sueños Center has traditionally been treated as a trust position by former and current municipal administrations, notwithstanding the fact that the position is not described and/or regulated by any official municipal document.

3.13. Even if we were to classify plaintiff's former position as a "trust position" under Puerto Rico law (a tall order in its own right), it is settled law that for purposes of a First Amendment political discrimination claim such as this, "[w]hether a government position is 'political' does not depend upon such loose-fitting labels as 'confidential' or 'policymaking,' but on the *substance of the duties inherent in the position itself*." Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 12 (1st Cir. 1996) (emphasis in the original).

3.14. Applying this substance over labels approach, running the Mundo de Sueños Center could not be any further removed from requiring political loyalty to whomever is sitting as mayor since policy objectives are set by

ACUDEN and the person holding the director position is many degrees removed from the mayor in terms of administrative hierarchy, as per the organigram approved under Ordinance Number 1 (Series 2022-2023).

3.15. It bears noting that, between 2019 and 2020, job announcements were published in Guayanilla for the career (i.e., permanent) position of "Administrative Assistant", for which he was selected on August 2020 and for which he satisfactorily completed the requisite probationary period.

3.16. On February 2021, the current Mayor reappointed plaintiff to head the Mundo de Sueños Center, at a time in which the identity of the PDP candidate for mayor of Guayanilla in the 2024 general election was unknown.

3.17. To be sure, when appointing him to reassume the reins of the Mundo de Sueños Center in early 2021, Mayor Rivera-Rodríguez was well aware of plaintiff's political leanings, as the mayor's parents are close neighbors of Mr. Albarrán-Pérez, whose political proselytism was very open and well known within small town Guayanilla.

3.18. Any doubt on what codefendant Rivera-Rodríguez knew about plaintiff's politics is dispelled by the fact that on February 2021 (contemporary with the reappointment to Mundo de Sueños), in a meeting, the mayor

6

explicitly uttered to plaintiff the phrase "you are a PDP member but nonetheless I am appointing you because you do an excellent job".

3.19. Later, in an August 31, 2023 activity, while having lunch with the ACUDEN Administrator and in plaintiff's presence, Mayor Rivera-Rodríguez said of plaintiff that he was a good worker but that the only bad thing about him was that he was a PDP member.

3.20. Late in 2023, it became clear that Nelson Luis Santiago-Serrano (whose nickname is "Yanyun"), a young attorney, who works for the Puerto Rico Senate Vice-president Hon. Marially González, will be the PDP's candidate for mayor of Guayanilla in the general election that is only a few months ahead.

3.21. As he had done in previous elections, plaintiff went all in, in a very public fashion, for Mr. Santiago-Serrano, actively supporting and facilitating his candidacy.

3.22. Notwithstanding the uncontested fact that plaintiff has always performed at the highest level of competence as director of the Mundo de Sueños Center (under the current and former administrations), on December 21, 2023, just before the Holiday break and in the midst of candidacy filing season[1], Vice-Mayor Carlos Cintrón personally tendered a letter to plaintiff titled as "Reinstatement" through which

---

[1] Municipal governments in Puerto Rico generally recess in all but the most essential services (i.e., solid waste collection, municipal police, etc.) for Christmas, New Year's Day and until some time after Epiphany (January 6). Also, under Puerto Rico election law, individuals who wish to pursue elective public office must file their candidacy petitions during the last month of the year before the election.

7

plaintiff was informed that he would report to the Human Resources, based only on vague and factually unsupported allegations that he was supposedly needed in that dependency.

3.23. Regardless of defendants' decision to label the decision as a "reinstatement", plaintiff was being ousted from his position as Director of the Mundo de Sueños Day Care Center.

3.24. When he received the letter, plaintiff asked to speak to Mayor Rivera-Rodríguez and was afforded the opportunity to do so, whereupon he asked said codefendants whether this was being done because he supported Mr. Santiago-Serrano's candidacy, to which the Mayor responded with a shrug and nodding as if conceding the premise.

3.25. Besides the obvious frustration and humiliation that plaintiff's sudden ouster from his position entailed, the move changed plaintiff's gross salary from $3,000.00 per month to $1,721.43, resulting in a difference of $1,278.57, which constitutes loss income that continues to accrue as we speak.

3.26. Plaintiff was replaced as Director of the Mundo de Sueños Day Care Center by Ms. Joan M. Ramos-Quintana, a less qualified individual who also happens to be an NPP loyalist.

3.27. Also after plaintiff's ouster, Mayor Rivera-Rodríguez commented to janitor Julio A. De Jesús Martinez. "did you see how I removed that 'popular'".

3.28. It bears noting that on May 10, 2023 plaintiff and the Mayor signed a "Retention Bonus Agreement", in which it was agreed that plaintiff would receive a retention bonus paid from ACUDEN funds with the quid pro quo being that he would remain in his position as Director of the Mundo de Sueños Day Care Center for at least 12 additional months and, if he failed to hold the position for that period, the Municipality would be forced to reimburse the bonus to ACUDEN and then seek recovery from plaintiff.

3.29. In ousting plaintiff prior to May 10, 2024, defendants have exposed said party to having to reimburse his retention bonus through no fault of his own.

3.30. The abusive and discriminatory conduct undertaken by the defendants drove plaintiff into a clinically depressed state that required medical treatment and that became well known to his coworkers in the Municipality.

3.31. While plaintiff was at his lowest point in terms of his emotional health, on February 15, 2024, upon interacting with him at the Human Resources office Mayor Rivera-Rodríguez asked plaintiff whether or not he was alone in the office and advising him that, if he was alone he may hang himself, which prompted plaintiff to file a criminal complaint which is now being investigated by the Puerto Rico Police Bureau as Complaint Number 2024-3-031-00404.

3.32. Based on the above facts, it is clear that the only, or at least the main reason, why plaintiff was removed from his position as Director of the Mundo de Sueños Day Care Center was his support for the PDP and, more specifically, his support for Mr. Santiago-Serrano's mayoral run.

3.33. Because plaintiff was not a policy-making employee, Mayor Rivera-Rodríguez was not entitled to demand political loyalty as an appropriate job requirement and his ouster from said position was in violation of the freedom of speech and freedom of association rights enshrined in the First Amendment to the U.S. Constitution, Sections 1 and 4 of Article II of the Puerto Rico Constitution and an intentional tort pursuant to Articles 1536 and 1540 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 10801; 10805, which establish the general Puerto Rico tort statute and vicarious liability for the tortious conduct of others.

3.34. Because in removing plaintiff from his former position, codefendant Rivera-Rodríguez abused the nominating authority prerogatives enjoyed by him under the Municipal Code, his actions constituted municipal policies and are deemed as actions undertaken by the Municipality of Guayanilla for purposes of § 1983.

3.35. As a result of defendants' unconstitutional discriminatory conduct, plaintiff has been placed under substantial financial strain for having to meet the financial obligations of a person who earns $3,000.00 per month with a salary of little more than half that amount.

3.36. Additionally, as a result of his ousting, plaintiff has begun to suffer and continues to suffer profound feelings of anger, sadness, frustration, anxiety and despair.

3.37. Plaintiff's economic losses (which includes yet to be determined components such as backpay) and emotional damages are estimated in an amount of no less than $1,000,000.00, for which defendants are jointly and severally liable.

3.38. The individual capacity-defendant has clearly engaged in a brutal abuse of public authority for the sole purpose of weakening his political opposition and asserting political dominance, perpetuating his power and punishing opponents, all in reckless and wanton disregard of plaintiff's federally protected rights in a way that would shock the conscience of fair minded, objective individuals.

3.39. Because of the circumstances described in the previous paragraph, the individual-capacity defendant[2] should be taxed with a punitive damages award of no less than $500,000.00 so that they be duly punished for his abhorrent conduct and be made an example for others considering engaging in similar misconduct.

3.40. Plaintiff is additionally entitled to an injunction ordering his reinstatement to his position with the Mundo de Sueños Day Care

---

[2] The Municipality of Guayanilla is immune from the imposition of punitive damages under 42 U.S.C. § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

Center, as well as to reasonable attorney's fees (assessed under the lodestar method), as per 42 U.S.C. § 1988.

3.41. Plaintiff hereby invokes his right under the Seventh Amendment of the U.S. Constitution to a jury disposition on all claims so triable[3].

**WHEREFORE** it is respectfully requested from this Honorable Court that the relief requested in the instant action be hereby **GRANTED**.

In San Juan, Puerto Rico this 22nd day of March, 2024.

**RESPECTFULLY SUBMITTED,**

**M.L. & R.E. LAW FIRM**
Cobian's Plaza – Suite 404
1607 Ponce De León Ave.
San Juan, Puerto Rico 00909
Tel (787) 999-2979

*S/Jorge Martínez-Luciano*
**JORGE MARTÍNEZ-LUCIANO**
USDC-PR Number 216312
e-mail: squalus@rocketmail.com

*S/Emil Rodríguez-Escudero*
**EMIL RODRÍGUEZ-ESCUDERO**
USDC-PR Number 224312
e-mail: emil@mlrelaw.com

---

[3] I.e., all of plaintiff's claims but for those seeking injunctive relief, as they are equitable in nature.