IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose D. Albarran-Perez<br><br>        Plaintiff,<br><br>            v.<br><br>Raúl Rivera-Rodríguez in his individual capacity and in his official  capacity as Mayor of Guayanilla; Municipality of Guayanilla<br>        Defendants. | Civil No. 24-1142(GMM) |

## OPINION AND ORDER

Before the Court are the *Motion to Dismiss the Amended Complaint (DKT. 34) and Memorandum of Law in Support Thereof* (Docket No. 41) filed by the Municipality of Guayanilla ("Municipality") and the Hon. Raúl Rivera Rodríguez ("Rivera-Rodríguez"), in his official capacity as Mayor of Guayanilla and the *Motion to* Dismiss *for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and for Joinder* filed by Rivera-Rodríguez, in his personal capacity (Docket No. 44). The Motions to Dismiss are **DENIED**.

Civil No. 24-1142 (GMM)
Page — 2 —

## I. RELEVANT FACUTAL AND PROCEDURAL BACKGROUND[1]

On November 21, 2024, José D. Albarrán-Pérez ("Albarrán) filed an *Amended Complaint* against Rivera-Rodríguez in his personal capacity and official capacity as Mayor of Guayanilla and the Municipality (collectively, "Defendants"), pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First Amendment to the Constitution of the United States, as well as the Puerto Rico Civil Code. (Docket No. 34). Albarrán seeks compensatory and punitive damages because of the alleged political discrimination by Defendants.

Specifically, Albarrán alleges that he is "an active, vocal and well-known leader and member of the Popular Democratic Party" ("PDP") and that Rivera-Rodríguez, municipal president of the New Progressive Party ("NPP") holds the office of Mayor of Guayanilla after being elected on November 2020, having been reelected to a second term in 2024, taking office on January 2025. (Id. at 2). Albarrán began working as a municipal employee in the Municipality since 2006, as a worker assigned to the Municipal Public Works Department. (Id. at 4). In 2015, he was appointed as director of the "Mundo de Sueños Day Care Center," ("Day Care") a post for

---

[1] The factual background contained in this motion is primarily drawn from the allegations contained in the *Amended Complaint* at Docket No. 34. The Court's recitation of Plaintiff's allegations does not indicate an adoption of those claims as factually true.

Civil No. 24-1142 (GMM)
Page – 3 –

which he was reappointed by the subsequent two mayors of the
Municipality and in which he remained until December 2023. (Id.).

The Day Care is operated by the Municipality for its employees
and is funded through a federal grant channeled through the
"Administración para el Cuidado y Desarrollo Integral de la Niñez"
("ACUDEN") which, in turn, is part of the Puerto Rico Family and
Children Department. (Id.) Albarrán accepts that traditionally,
his appointment as director of the Day Care has been treated as a
trust appointment by former and current municipal administrations.
(Id. at 5). On August 2020, Albarrán was selected for the position
of "Administrative Assistant". He completed the requisite
probationary period. (Id.). On February 2021, Rivera-Rodríguez
reappointed Albarrán to head the Day Care. At this time, the
identity of the PDP candidate for mayor of Guayanilla in the 2024
general election was unknown. (Id.).

As per Albarrán, at the time of his reappointment to head the
Day Care in early 2021, Rivera-Rodríguez was aware of his
"political leanings, as the mayor's parents are close neighbors of
Mr. Albarrán-Pérez, whose political proselytism was very open and
well known within small town Guayanilla." (Id. at 6). Albarrán
alleges that during February 2021 meeting, Rivera-Rodríguez
uttered "you are a [PDP] member but nonetheless I am appointing
you because you do an excellent job." (Id.). He also asserts that
on August 31, 2023, Rivera-Rodríguez said, "he was a good worker

Civil No. 24-1142 (GMM)
Page - 4 -

but that the only bad thing about him was that he was a [PDP] member." (Id.).

Further, Albarrán posits that he was actively and publicly supporting Nelson Luis Santiago-Serrano as PDP candidate for mayor of the Municipality. He adds that on December 21, 2023, just before the Holiday break and amid candidacy filing season, Vice-Mayor Carlos Cintrón personally tendered him a letter titled "Reinstatement." (Id. at 7). Albarrán was informed that he should report to Human Resources. (Id.). He alleges that he had been ousted from his position as Director of the Day Care. (Id.). Albarrán requested to speak with the Rivera-Rodríguez. He allegedly questioned the mayor "whether this was being done because he supported [Santiago-Serrano's] candidacy, to which the Mayor responded with a shrug and nodding as if conceding the premise." (Id.).

According to Albarrán, in addition to being humiliated caused by his firing from his position, his salary was reduced monthly from $3,000 to $1,721.43. He alleges that he was replaced "by Ms. Joan M. Ramos-Quintana, a less qualified individual who also happens to be a NPP loyalist." (Id. at 7-8). Albarrán also alleges that Rivera-Rodríguez commented to janitor Julio A. De Jesús Martinez, "did you see how I removed that 'popular.'" (Id. at 8). While he was advised of his need at his career position, he was really "banished to the Human Resources Department" pending duty

Civil No. 24-1142 (GMM)
Page – 5 –

assignment. (Id.). Albarrán then demanded that his supervisors assign him duties to perform and, when that failed, he directly requested the mayor an assignment of work, in writing, and inquiring whether his working conditions were in retaliation for his having filed this suit. (Id.).

Albarrán posits that an opportunity arose for him to head the equivalent to the Day Care program in the neighboring Municipality of Lajas. This prompted him to request an inter-municipal transfer, a personnel transaction that required the mayor's approval. (Id. at 9). Rivera-Rodríguez ultimately denied his request. (Id.) In consequence, Albarrán "realized that [D]efendants had deliberately demoted him and later stripped him of the duties in his post to create a working environment that is intolerable to any reasonably-minded individual, as a ploy to force a resignation." (Id.). On November 7, 2024, Albarrán resigned in writing to Rivera-Rodríguez. (Id. at 10). On November 12, 2024, Rivera-Rodríguez accepted his resignation. (Id.)

In the *Amended Complaint*, Albarrán argues that the main reason for his removal from the Director of the Day Care position and subsequent transfer denial was his support for the PDP and its mayoral candidate. (Id.) Further, Albarrán asserts that he was not a policy-making employee, and that Rivera-Rodríguez was not entitled to demand political loyalty. (Id.) In sum, he alleges that Rivera-Rodríguez's actions were politically motivated in

Civil No. 24-1142 (GMM)
Page – 6 –

violation of his freedom of speech and freedom of association
rights.

On December 30, 2024, the Municipality and Rivera-Rodríguez,
in his official capacity as Mayor of Guayanilla filed a Motion to
Dismiss. (Docket No. 41). The Municipality and Rivera-Rodríguez,
in his official capacity, argue that Albarrán's *Amended Complaint*
does not properly allege a claim for political discrimination and
that his First Amendment claim warrants dismissal. Defendants
argue that Albarrán failed to show that his political affiliation
was the "substantial" or "motivating" factor behind a challenged
personnel transaction. (Docket No. 41 at 8).

According to Defendants the claim of discrimination is solely
based on an alleged "shrug" made by the Mayor and Plaintiff's
interpretation. To that extent, Defendants posit that this is the
only allegation in the *Amended Complaint* as to the alleged
discriminatory animus by Rivera-Rodríguez. (Id. at 8-9). Further,
Defendants assert that Rivera-Rodríguez appointed Albarrán to a
trust position and that there is no reason to surmise that the
transfer to another position within the Municipality was made with
a discriminatory intent. (Id. at 9).

In addition, Defendants argue that the position of Director
of the Day Care is also a trust position. (Id. at 12). Therefore,
they contend that "the allegations of the [A]mended [C]omplaint
are unsupported and misleading, and do not give rise to any cause

Civil No. 24-1142 (GMM)
Page – 7 –

of action. Thus, said [A]mended [C]omplaint should be dismissed in its entirety." (Id. at 15). Also, Defendants argue that Albarrán's Puerto Rico law claims should be dismissed since the Court should not exercise its supplemental jurisdiction. (Id. at 15-16).

On December 30, 2024, Rivera-Rodríguez, in his personal capacity, also filed a Motion to Dismiss and joined the Municipality's Motion to Dismiss. (Docket No. 44). In his personal capacity, Rivera-Rodríguez also argues that Albarrán held a trust position and that his reinstatement to his career position was not a violation to his First Amendment right. (Id. at 10). He claims that "[Albarrán's] cursory allegations claiming [Rivera-Rodríguez] knew his political affiliation and that that was the motivating factor for his immediate supervisor in the Human Resources Department to allegedly assign him no duties are insufficient to allege a political discrimination claim." (Id. at 11). Furthermore, Rivera-Rodríguez contends that he is shielded by the qualified immunity defense, since Albarrán's allegations do not amount to a violation of a clearly established statutory or constitutional right, of which a reasonable person would have known. (Id. at 15).

On January 29, 2025, Albarrán filed his *Omnibus Opposition to Motions to Dismiss at Dockets Numbers 41 and 44*. (Docket No. 51). In response to the Defendants' arguments, Albarrán posits that his appointment to a "non-policy-making position that is

Civil No. 24-1142 (GMM)
Page – 8 –

classified as a trust position does not negate the possibility of a subsequent unconstitutional removal." (Id. at 2). In addition, he argues that his *Amended Complaint* contains more than one averment establishing political discrimination and that "[p]olitical animus is more than sufficiently pled in the instant case." (Id.). He further argues that the Defendant's trust position argument is flawed both, procedurally and in substance. (Id. at 4-8). Also, Albarrán posits that Rivera-Rodríguez's qualified immunity defense fails as a matter of law. (Id. at 12-13).

On February 14, 2025, Rivera-Rodríguez, in his personal capacity, filed *Personal Capacity Co-Defendant's Reply to Omnibus Opposition to Motions to Dismiss at Docket Numbers 41 And 44.* (Docket No. 56). Also, the Municipality and Rivera-Rodríguez, in his official capacity, filed *Reply to "Omnibus Opposition to Motions To Dismiss" (DKT. 51)* (Docket No. 57).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure, provides that a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint, taken as true by the court, which also draws all inferences in the pleader's favor, must state a plausible, not merely conceivable, case for relief." Cebollero-

Civil No. 24-1142 (GMM)
Page – 9 –

Bertran v. Puerto Rico Aqueduct & Sewer Auth., 4 F.4th 63, 69-70
(1st Cir. 2021) (internal citations and quotations omitted); *see
also* Schatz v. Republican State Leadership Comm'n., 669 F.3d 50,
55 (1st Cir. 2012); Ashcroft v. Iqbal, 556 U.S. 662, 680-81
(2009)). Plausible does not mean probable but instead merely
"demands more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." Iqbal, 556 U.S. at 678 (*quoting* Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 556-57(2007)).

In performing a 12(b)(6) analysis, a Court first "accepts as
true the non-conclusory factual allegations in the complaint and
draws all reasonable inferences in the plaintiff's favor." In re
Fin. Oversight & Mgmt. Bd. for Puerto Rico, 633 B.R. 463, 471-72
(D.P.R. 2021) (*citing* Mississippi Pub. Emps.' Ret. Sys. v. Boston
Scientific Corp., 523 F.3d 75, 85 (1st Cir. 2008)); *see also*
Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011)
(In ruling on a 12(b)(6) motion, a court is "obligated to view the
facts of the complaint in the light most favorable to the
plaintiffs, and to resolve any ambiguities in their favor."). The
Court must then "isolate and ignore statements in the complaint
that simply offer legal labels and conclusions or merely rehash
cause-of-action elements." Oto Analytics, LLC Pl., v. Benworth
Capital Partners PR, LLC et al, No. CV 23-01034(GMM), 2025 WL
989954, at *5 (D.P.R. Apr. 2, 2025) (*quoting* Schatz, 669 F.3d at
55). If the "factual content, so taken 'allows the court to draw

Civil No. 24-1142 (GMM)
Page – 10 –

the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility" and the Court must deny the motion to dismiss. Ocasio-Hernández, 640 F.3d at 12 (*quoting* Iqbal, 556 U.S. at 678, 129 S.Ct. 1937).

### III. DISCUSSION

A.   Section 1983

Section 1983 forbids a person, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" to deprive others of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a colorable claim pursuant to § 1983, the Court must examine: (1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543 (1st Cir. 2021); Sánchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).

1.   Under color of state law

Acting under color of state law requires that a defendant in § 1983 action has exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988) (*quoting* United States v. Classic, 313 U.S. 299, 326 (1941)).

Civil No. 24-1142 (GMM)
Page - 11 -

"Municipalities may be sued directly under section 1983 for monetary, declaratory, and injunctive relief." Concepción v. Municipality of Gurabo, 560 F.Supp.2d 139, 141 (D.P.R. 2008) (*citing* Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978)). Municipal liability can be established in two ways: (1) when a municipal custom or policy causes a constitution violation, or (2) when a person with final decision-making authority took the action that violated the constitutional right. *See* Kelly v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002); Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382 (1997); Albino v. Municipality of Guayanilla, 925 F.Supp.2d 186, 192-93 (D.P.R. 2013). "Under § 1983, municipalities can be liable for constitutional violations only if the violation occurs pursuant to an official policy or custom." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (*citing* Monell, 436 U.S. at 694). A plaintiff can establish the existence of an official policy by showing that the alleged constitutional injury was caused by a person with final policymaking authority. *See* City of St. Louis v. Praprotnik, 485 U.S. 112, 123-24 (1988).

Here, at all relevant times, Rivera-Rodríguez was employed by the Municipality and acted in his official capacity as mayor. Thus, Rivera-Rodríguez acted under color of state law when the purported conduct transpired. Section 1983 is an appropriate avenue to remedy Albarrán's claims against him and the Municipality. The Court now

Civil No. 24-1142 (GMM)
Page – 12 –

analyzes whether Albarrán has plausibly alleged constitutional violations by Defendants.

    2.   <u>Constitutional Violation</u>

"Government officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." <u>Santiago v. Municipality of Utuado</u>, 114 F.4th 25, 38 (1st Cir. 2024) (*quoting* <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 13 (1st Cir. 2011)); *see also* <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 75–76 (1990); <u>Branti v. Finkel</u>, 445 U.S. 507, 516–518 (1980); <u>Elrod v. Burns</u>, 427 U.S. 347, 372–73 (1976). However, government officials cannot discharge public employees simply because of their political affiliations. *See* <u>Elrod</u>, 427 U.S. at 350. Additionally, "[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." <u>Rutan</u>, 497 U.S. at 75.

The Supreme Court of the United States has held that non-policymaking public employees are protected from adverse employment decisions based on their political affiliation. *See* <u>Elrod</u>, 427 U.S. at 354. While doing so, the Supreme Court emphasized the right to associate with the political party of one's choice as a basic constitutional freedom, a right which flows

Civil No. 24-1142 (GMM)
Page – 13 –

naturally from the principle that "debate on public issues should be uninhibited, robust, and wide-open." Elrod, 427 U.S. at 357(*quoting* New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)).

    a.   Political Discrimination

To state a claim for political discrimination under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly showing: "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind it." Ocasio Hernández v. Fortuño Burset, 640 F.3d at 3; Martinez-Velez v. Rey-Hernandez, 506 F. 3d 32, 39 (1st Cir. 2007).

Upon review of the *Amended Complaint*, the Court finds that the allegations are sufficient to meet the Twombly standard of plausibility. While the four elements cited in Ocasio Hernández form, in fact, the essence of a *prima facie* case of political discrimination, at this stage, the pleading standard under Twombly mandates only: (a) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (b) with enough detail to provide a defendant with "fair notice of what the. . .claim is and the grounds upon which it rests". Twombly, 550 U.S. at 555.

Civil No. 24-1142 (GMM)
Page – 14 –

Moreover, as <u>Twombly</u> establishes, requiring a plaintiff to show a plausible entitlement to relief is not synonymous to imposing a heightened pleading requirement. Therefore, <u>at this stage</u>, no "specific facts" that would prove the claim at trial are necessary. Any facts that serve to state a claim for relief that is plausible on its face, even if improbable, is enough. Thus, proving a *prima facie* case, as Defendants argue, is not required at the motion to dismiss stage; the First Circuit has stated as such. *See* <u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d 49, 51 (1st Cir. 2013); *see also* <u>Landrón & Vera, LLP, v. Somoza Colombani</u>, No. 12-1858, 2013 WL 2422807, at \*5 (D.P.R. June 13, 2013) ("A *prima facie* case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold."). However, this does not mean to imply that the elements of the *prima facie* case are irrelevant to a plausibility determination in a discrimination suit. "[T]he elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." <u>Rodriguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d at 54.

Therefore, the Court's only role at this stage is to determine whether the claims are plausible based on the facts alleged. The Court finds they are. In this light, the Court thus reviews the elements of the *prima facie* case.

The first prong of the inquiry requires Albarrán to demonstrate that he and Defendants have opposing political

Civil No. 24-1142 (GMM)
Page – 15 –

affiliations. At this stage, it is sufficient for him to allege he
and Defendants affiliate with different political parties.
Albarrán begins his *Amended Complaint* by alleging that he "is
active, vocal and well-known leader and member of the [PDP]" and
that Rivera-Rodríguez is the mayor or the Municipality and
municipal president of the NPP. (Docket No. 34 at 2 ¶ 2.1; 2.2).

As to the second element, Defendants' knowledge of Albarrán's
political affiliation, Albarrán avers that Rivera-Rodríguez made
politically charged comments directly to him. Specifically, he
alleges that on February 2021 Rivera-Rodríguez said: "you are a
PDP member but nonetheless I am appointing you because you do an
excellent job" (Id. at 6 ¶ 3.18). Also, he alleges that on August
31, 2023, during lunch, Rivera-Rodríguez again said in presence of
the ACUDEN Administrator that "he was a good worker but that the
only bad thing about him was that he was a PDP member". (Id. ¶
3.19). Albarrán also avers that Rivera-Rodríguez commented to
janitor Julio A. De Jesús Martínez "did you see how I removed the
'popular.'" (Id. at 8 ¶ 3.27).

These allegations are sufficient to meet the knowledge
requirement. Further strengthening this conclusion is the fact
that Ocasio-Hernández also required the Court to "evaluate the
cumulative effect of the factual allegations," to determine
whether all those facts as alleged, and viewed in a light favorable
to plaintiff, render the requested relief plausible. *See* Ocasio-

Civil No. 24-1142 (GMM)
Page – 16 –

Hernández, 640 F.3d at 14 (explaining that the complaint should be "read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). Therefore, this requires the Court to consider whether the information regarding Albarrán's political affiliation was potentially accessible to Defendants from sources other than himself. These facts obviously meet the plausibility standard. The Court considers that Guayanilla is a relatively small town, where people know each other, and it is common in Puerto Rico for people to generally be familiar with other people's political affiliations, particularly if they are heavily involved in partisan politics.

To this extent, in the *Amended Complaint* Albarrán alleges that he has spent his entire life as an active supporter of the PDP in Guayanilla, beginning with his participation of former PDP Mayor's Edgardo Arlequín-Vélez' Advance Team since 2004, followed with a very active role in the PDP Youth Organization in Guayanilla. (Id. at 3 ¶ 3.5). He also alleges that "when appointing him to reassume the reins of the [Day Care] in early 2021, [Rivera-Rodríguez] was well aware of plaintiff's political leanings, as the mayor's parents are close neighbors of [Albarrán], whose political proselytism was very open and well known within small town Guayanilla." (Id. at 6 ¶ 3.17). Examining these allegations as a whole and making all inferences in favor of Albarrán —as the

Civil No. 24-1142 (GMM)
Page – 17 –

Court is required to do— they make for a plausible claim at this stage that Defendants had knowledge of his political affiliation.

Moving to the third prong, Albarrán must point to an adverse employment action. "[S]howing that an employer transferred, demoted, or failed to promote an employee will suffice." Caraballo v. Puerto Rico, 990 F.Supp.2d 165, 176 (D.P.R. 2014). It is well settled that "[a]n adverse employment action includes not only a discharge or a demotion, but also a government entity's refusal to promote, transfer, recall after a layoff, or even hire an employee." Torres-Rivera v. O'Neill-Cancel, 598 F.Supp.2d 331, 256 (1st Cir. 2008). Albarrán alleges that he was removed from his trust position and reinstated as a career employee in Human Resources. He adds that such action negatively impacted his salary from $3,000.00 per month to $1,721.43, which resulted in a difference of $1,278.57. (Id. at 7 ¶ 3.25).

Defendants aver that Albarrán's position as Director of the Day Care is a trust position, subject to removal at will. A government employee who does not occupy a policymaking position of confidence and trust is protected from adverse employment decisions based on political affiliation. Figueroa-Serrano v. Ramos-Alverio, 221 F.3d at 1, 7 (1st Cir. 2000). However, there is a controversy as to whether Albarrán held a trust position because of his duties and performance. As it stands today, the record is devoid of information that indubitably implicates policy and

Civil No. 24-1142 (GMM)
Page — 18 —

supports a finding that the position is a policy-making "trust" position for which political affiliation is a proper requirement.[2]

In addition, Albarrán claims another adverse employment action, to wit that he requested an "inter-municipal" transfer to Lajas, a move that required the mayor's approval in his role as nominating authority, and that Rivera-Rodríguez denied such request. (Id. at 9 ¶ 3.34, 3.36). Albarrán also alleges constructive discharge from his career position in Human Resources, that is, being "banished to the Human Resources Department to be assigned no duties to perform". This, together with other allegedly politically motivated actions, moved him to resign. (Id. at 7-11 ¶¶ 3.31, 3.33, 3.34, 3.36, 3.37, 3.38, 3.39). At this stage, Albarrán has also sufficiently pled that new "working conditions imposed by the employer had become so onerous,

---

[2] "When evaluating a Rule 12(b)(6) motion to dismiss, the Court is generally limited to the four corners of the complaint." Young v. Lepone, 305 F.3d 1, 10-11 (1st Cir. 2002). "A motion to dismiss may be converted to a motion for summary judgment '[a]t the discretion of the district court.'" Rubert-Torres v. Hosp. San Pablo Inc., 205 F.3d 472, 475 (1st Cir. 2000). See also Douglas v. Hirshon, 63 F.4th 49, 58 (1st Cir. 2023), cert. denied, 144 S. Ct. 621 (2024). "[M]otions under Rules 12(b)(6) and 56 present a plaintiff with different hurdles, the latter of which looms larger than the former." Martínez v. Novo Nordisk Inc., 992 F.3d 12, 19 (1st Cir. 2021). The Rule 12(b)(6) standard is "intended to screen out claims in which the factual allegations of the complaint are too scanty or too vague to render the claims plausible," Ríos- Campbell v. U.S. Dep't of Com., 927 F.3d 21, 25 (1st Cir. 2019), whereas the Rule 56 standard is "intended to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required,'" Id. (quoting Tobin v. Fed. Express Corp., 775 F.3d 448, 450 (1st Cir. 2014)). Although the Defendants include a job description for the position of Director of the Day Care as an exhibit to their Motion to Dismiss, the Court, in its discretion, declines to convert the Motion to Dismiss to a motion for summary judgment. Furthermore, the Court finds that a complete record is better suited to decide on the trust position issue.

Civil No. 24-1142 (GMM)
Page – 19 –

abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 54 (1st Cir.2000).

Therefore, Albarrán has also sufficiently plead that an adverse employment action was taken against him.

Finally, as to the fourth prong of the inquiry, that political affiliation was a substantial or motivating factor for Defendants' actions, it is also met. The fact that Albarrán was removed from his trust position as Director of the Day Care just before the Holiday break, and in the middle of the candidacy filing season, and that an NPP individual was appointed to replaced him, are allegations that all weigh heavily against Defendants' arguments, and "unquestionably contribute —at the motion to dismiss stage— to the reasonable inference that the employment decision was politically motivated." Ocasio-Hernández, 640 F.3d at 18. Upon removal from his previous position, Albarrán was then appointed as Administrative Assistant at a lower salary. In addition, Albarrán claims that he confronted Rivera-Rodríguez once he received his reinstatement letter, questioning if such action was a result of his support to the PDP mayoral candidate, and that Rivera-Rodríguez responded with a shrug and nodding in response. (Id. at 7 ¶ 3.24). He also alleges that he was replaced by a "NPP loyalist". (Id. at 7-8 ¶ 3.26). The Amended Complaint also asserts political harassment in the form of comments from Rivera-Rodríguez, which

Civil No. 24-1142 (GMM)
Page – 20 –

include an alleged conversation on February 15, 2024, where he seemed to invite Albarrán to hang himself. *See* (Docket No. 34 at 9 ¶ 3.42). As the nominating authority, Rivera-Rodríguez was presumptively the decision maker concerning the renewal of Albarrán's appointment as Director of the Day Care, who denied the request for transfer. Moreover, it is alleged that he seemingly ignored Albarrán's complaints regarding the assignment of duties and work environment in the reassigned position.

Taken together, the Court finds that it has enough to bring the facts in the *Amended Complaint* into the plausible category. Whether discovery will conclusively establish this conduct remains to be seen and will undoubtedly be the subject of further dispositive motions and ultimately, potential matters to be considered by the jury to determine as the ultimate factfinders. The same applies to Defendants' argument that the allegations are insufficient for the Court to determine whether Defendants' actions were governed by political animus. Intent is a matter for Defendants to disprove during their presentation of the evidence, and for the jury to decide.

B.   Qualified Immunity

Regarding the qualified immunity defense, Rivera-Rodríguez, in his individual capacity, contends that Albarrán failed to set forth a *prima facie* case of political discrimination. As such, he

Civil No. 24-1142 (GMM)
Page – 21 –

proffers he is protected by this doctrine and the case should be dismissed.

The Court found that Albarrán presented enough facts to meet the plausibility standard and declined to dismiss the political discrimination claim. As such, the Court must also deny the request to dismiss based on qualified immunity <u>without</u> prejudice. Rivera-Rodríguez is free to revisit this argument on a developed record, at the summary judgment stage should he deem it necessary.

## IV. CONCLUSION

For the reasons stated herein the Court **DENIES** the Motions to Dismiss at Docket Nos. 41 and 44.

IT IS SO ORDERED.

In San Juan, Puerto Rico, April 7, 2025.


<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE